1

2

3

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

4

5

6

DEVON J. SCOLLARD,

7                          Plaintiff,

8        v.

9    STAFFORD CREEK CORRECTIONS
     CENTER, et al.,

10                         Defendants.

Case No. 3:22-cv-05851-TMC-TLF

ORDER AND REPORT AND
RECOMMENDATION

Noted for __October 2, 2024__

11

12        Plaintiff Devon J. Scollard, a prisoner at the time of the filing of his complaint,

13    proceeds *pro se* and *in forma pauperis* in this 42 U.S.C. § 1983 civil rights action.[1] This

     matter has been referred to the undersigned Magistrate Judge. *Mathews, Sec'y of*

14    *H.E.W. v. Weber*, 423 U.S. 261 (1976); 28 U.S.C. § 636(b)(1)(B); Local Rule MJR

15    4(a)(4).

16        Plaintiff's complaint originally raised five claims. Dkt. 4. Counts I, II, III, and

17    portions of Counts IV and V as well as defendants Stafford Creek Corrections Center

18    (SCCC), Teamsters Union, Gina Penrose, Rob Schreiber and D. Brewer, were

19    previously dismissed from the action. *See* Dkts. 5, 38, 54, 55. This matter is currently

20    before the Court on the filing of a motion for summary judgment by the remaining

21

22

23    ---
     [1] Defendants submit evidence that plaintiff was released from Department of Corrections (DOC) custody
24    to community supervision on September 12, 2023, and that his community supervision was due to end on
     August 2, 2024. Dkt. 68 at 2; Dkt. 68-1.

25

ORDER AND REPORT AND RECOMMENDATION - 1

defendants -- Cheryl Strange, Ron Haynes, Barry Dehaven, Villalobos[2], Ivey, and Johnson -- who seek to dismiss the remaining claims in this action. Dkt. 65. Plaintiff did not file a response to defendants' motion.

For the reasons set forth below, the undersigned recommends the Court should GRANT defendants' motion for summary judgment (Dkt. 65) and should DISMISS the claims against defendant Ivey *with prejudice*; and the Court should DISMISS the remaining claims *without prejudice* as provided below.

## FACTUAL BACKGROUND

Plaintiff's complaint originally raised five separate counts alleging his First, Fifth, Eighth, and Fourteenth Amendment rights were violated during his incarceration at SCCC. Dkt. 4. Plaintiff's complaint originally named the following DOC employees as defendants: Cheryl Strange, DOC Secretary; Barry DeHaven, Disciplinary Hearings Officer; Ron Haynes, Superintendent at SCCC; Gina Penrose, Associate Superintendent at SCCC; Rob Schreiber, CPM of SCCC; D. Brewer, Resolution Specialist; Villalobos, Corrections Officer (CO); Ivey, CO; Johnson, Sergeant; SCCC; and Teamsters Union. *Id.*

On June 12, 2023, the Court dismissed plaintiff's claims against SCCC with prejudice and against the Teamsters Union without prejudice at screening for failure to state a claim. Dkts. 5, 38.

Defendants subsequently moved to dismiss the remaining claims. Dkt. 31. On September 28, 2023, the Court granted in part and denied in part the defendants' motion to dismiss. Dkts. 54, 55. Specifically, the Court dismissed the following claims

---

[2] Plaintiff's complaint appears to have misspelled this defendant's name as "Villanobos."Dkt. 4.

without prejudice: plaintiff's due process claims (Counts I, II, and III); and the following portions of Claims IV and V -- plaintiff's retaliation claims against defendant Ivey related to his transfer, against D. Brewer related to the issuance of a "notice of abuse by quantity", and plaintiff's generalized allegations of retaliation that are not linked to any defendant, plaintiff's Eighth Amendment claims based on the violation of his due process rights in the disciplinary hearings, and based on his placement in max custody or an indeterminate placement in max custody as itself constituting a violation. *Id.*

The Court dismissed plaintiff's official capacity claims for damages with prejudice. *Id.*

The Court denied the motion to dismiss with respect to the remaining portions of Counts IV and V, and allowed the following claims to proceed: plaintiff's retaliation claims against defendants Ivey and Villalobos related to the search of his cell, and against Sergeant Johnson related to his statements to plaintiff about grievances; plaintiff's Eighth Amendment claims, alleged against defendants Strange, Dehaven and Haynes, related to the alleged disproportionality of his punishment to his alleged non-violent offenses (even if he was properly found guilty in his disciplinary hearings), and plaintiff's challenges to the specific conditions of the confinement (including prolonged duration, social isolation, lack of programming opportunities, plaintiff's preexisting anxiety, and the alleged deterioration of his pre-existing mental health issues). *Id.*

Plaintiff was granted leave to file an amended complaint with respect to certain of his dismissed claims within thirty days – he failed to do so. *Id.*

The remaining defendants -- Ivey, Villalobos, Johnson, Dehaven, Strange and Haynes -- now move for summary judgment and dismissal of the remaining claims in this action. Dkt. 65.

In his remaining claims in Count IV, plaintiff alleges he was retaliated against in violation of his First Amendment rights. Dkt. 4 at 49-60. Plaintiff indicates that, on August 16, 2022, he was told by Sergeant Johnson that "filing grievances is bad behavior and he doesn't reward bad behavior." *Id.* He alleges on August 17 Sergeant Johnson told him "if you don't stop filing grievances your [sic] never get [sic] anything when I'm working." *Id.* Plaintiff claims this is a very intimidating threat because Sergeant Johnson is the third shift sergeant five days per week. *Id.* Plaintiff alleges these statements were made after he filed grievances related to being denied scheduled law library time. *Id.*

Plaintiff indicates that, on August 28, 2022, his cell was searched by CO Villalobos and CO Ivey. *Id.* He indicates he left his legal materials out and went to the yard. *Id.* He alleges that when he returned no search report had been left in his cell as directed by policy and he noticed various items missing including three legal drafts he was working on for this and other lawsuits. *Id.* Plaintiff alleges his legal drafts were taken in retaliation for filing grievances and bringing his lawsuits. *Id.*

Plaintiff brings his Count IV claims against defendants Villalobos, Ivey and Johnson in their "personal capacity." *Id.* As relief he seeks: (1) $25,000 in compensatory damages, $25,000 in exemplary damages, $100,000 in punitive damages, and (2) injunctive relief by "having all employees liable for Count 4 fired." *Id.*

In his remaining claims in Count V, plaintiff alleges he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment. Dkt. 4 at 69-80. Plaintiff alleges that he was detained in max custody, which he claims is equivalent to solitary confinement, for a prolonged period (fourteen months at the time of the filing of his complaint). *Id*. He alleges he was detained there despite the fact that no infractions were violent in nature or posed a threat to anyone or the safety and security of the institution and despite the fact that he had pre-existing mental health issues and that his mental health deteriorated significantly over the time he spent in max custody. *Id*.

Plaintiff also challenges the max custody policies as written and the application of the policies as effectively allowing inmates to be placed and retained in solitary confinement for indeterminate periods of time for non-violent offenses and with no actual path to move out of max custody. *Id.*

Plaintiff contends max custody is 23 hours in a cell and one hour out five days a week -- and 24 hours in a cell two days a week. *Id.* Plaintiff alleges DOC is "using a classification label to justify holding someone in solitary confinement for indefinite periods for behaviors that were not violent in nature and posed no threat to the safety and security of the facility." *Id.* Plaintiff contends max custody is a disciplinary measure -- it is the result of being found guilty of serious infractions. *Id.*

Plaintiff alleges the following policies embody the unconstitutional practice of indefinite solitary confinement: DOC Policy 320.250; max custody placement transfer/release; DOC Policy 320.255 restrictive housing; DOC Policy 300.380 classification and custody facility plan. *Id.*

Plaintiff claims these policies do not reflect the real practices of how these policies are actually used by DOC. *Id.* For example, plaintiff indicates DOC Policy 320.250 states that the Department has established guidelines for demotion to transfer between and release from maximum custody (max) for incarcerated individuals who: (a) pose a significant risk to the safety and security of employees, contract staff, volunteers or other individuals; (b) have validated protection needs; (c) designated individuals with serious mental health illness." *Id.* Plaintiff contends he does not meet the criteria for max custody placement as defined by DOC policy because none of his alleged infractions were violent in nature or posed a threat to anyone or the safety and security of the institution. *Id.* He claims no DOC employee has ever claimed his placement has anything to do with either category (b) or (c). *Id.*

Plaintiff claims DOC has another policy that sets a "double standard" regarding max custody. *Id.* He states under DOC Policy 300.380 under general requirements H) it says "individuals may be referred for max custody assignment per DOC 300.250 maximum custody placement/transfer/release regardless of custody level." *Id.* He states the same policy states under custody facility plans (A)(2) "custody will only be demoted one level at a time (e.g., medium demotes to close) unless an override is approved." *Id.*

Plaintiff argues this demonstrates that, not only do the policies allow for an unconstitutional practice of indefinite long term solitary confinement, but they essentially "break themselves" and are generally not followed -- reasons why someone can receive a "max custody" placement are not being applied as written, which "creates a significant deprivation to go from medium to max custody especially for non-violent reasons." *Id.*

Plaintiff further alleges the policies state no clear definite end date or series of events to move out of max custody. *Id.* He indicates the policies allude to "progressive movement to less restrictive custody" but he contends that "doesn't occur." *Id.* He contends the "level step system" only has to do with commissary not time out of cell. *Id.* He contends DOC misrepresents the actual process of max custody in both DOC policy 320.250 and DOC policy 320.255. *Id.*

Plaintiff claims he has been "severely traumatized" because of his prolonged placement in max custody. *Id.* He claims the placement has severely impacted his mental health. *Id.* He indicates he suffered from general anxiety disorder and panic attacks along with "ND-PAC"[3] before being placed in the Intensive Management Unit (IMU). *Id.* He contends his anxiety and panic amount to a level 8 to 10 on a scale of 1-10 for the last 6 months while in solitary confinement. *Id.*

He asserts that his relationships with his family and friends have suffered due to lack of communication and his conversations have become "transactional." *Id.* He indicates he is very depressed, and his social skills have dwindled. *Id.* He indicates he never dealt with depression before and now he experiences that it is consuming and creates suicidal thoughts. *Id.* Plaintiff indicates he asked for programming but was told to wait until he was out of IMU. *Id.* He indicates he finally received and completed a program, "cognitive behavioral change plan" through mental health, not through classification. *Id.*

---

[3] The Court notes these letters (or words) are not completely legible in the complaint and it is unclear what they are intended to mean.

Plaintiff alleges in Count V that defendants Strange, Dehaven, and Haynes are responsible for these violations in their personal and official capacities. *Id.* Plaintiff alleges defendant Haynes is responsible for the Eighth Amendment violations as plaintiff wrote letters and kites to him about the unconstitutional punishments and practices, yet he allowed it to continue. *Id.* Plaintiff alleges defendant Strange's signatures are on some of the policies, and that she has publicly acknowledged the negative effects of solitary confinement. *Id.* Plaintiff asserts that defendant Strange indicated DOC was no longer using solitary confinement as a punitive measure, and that plaintiff has sent defendant Strange letters asking her to stop the unconstitutional punishment. *Id.* Count V is somewhat unclear with respect to allegations against defendant Barry Dehaven, but it appears plaintiff is asserting that Dehaven imposed disproportionate punishment in the disciplinary hearings that resulted in plaintiff being placed in and maintained in max custody for a prolonged period, despite the fact that plaintiff's offenses were non-violent. *Id.*

As relief for Count V, plaintiff seeks: (1) $25,000 in compensatory damages, $25,000 in exemplary damages, and $100,000 in punitive damages, and (2) injunctive relief of abolishing max custody and indefinite solitary confinement to create definite measures of punitive action. *Id.*

DISCUSSION

Summary judgment is supported if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Federal Rule of Civil Procedure (FRCP) 56(c). A "material" fact is one which is "relevant to an element of a claim or defense and whose existence might affect the outcome of the

suit," and the materiality of which is "determined by the substantive law governing the claim." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"); *Hansen v. U.S.*, 7 F.3d 137, 138 (9th Cir. 1993) (nonmoving party cannot rely on conclusory allegations to raise a genuine issue of material fact); *see also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 253 (1986); *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.

When the Court considers a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson*, 477 U.S. at 255. Yet the Court is not allowed to weigh evidence or decide credibility. *Id.* at 249. The Court may not disregard evidence solely based on its self-serving nature. *Nigro v. Sears, Roebuck & Co.,* 784 F.3d 495, 497 (9th Cir. 2015).

The court must determine whether the specific facts that are presented by the non-moving party, considered along with undisputed context and background facts,

would show that a rational or reasonable jury might return a verdict in the non-moving

party's favor based on that evidence. *Emeldi v. University of Oregon,* 698 F.3d 715,

728-29 (9th Cir. 2012) (citing *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 and *Anderson*, 477

U.S. at 257).

To state a claim under 42 U.S.C. § 1983, a complaint must allege: (a) the

conduct complained of was committed by a person acting under color of state law, and

(b) the conduct deprived a person of a right, privilege, or immunity secured by the

Constitution or laws of the United States. *See Parratt v. Taylor*, 451 U.S. 527, 535

(1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). Section

1983 is the appropriate avenue to remedy an alleged wrong only if both of these

elements are present. *See Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985).

Under Section 1983, an inmate must show that each of the defendants was involved in

violating the Constitution; liability of an official will only be found if there is individual

culpable action or inaction. *Hines v. Youseff,* 914 F.3d 1218, 1228 (9th Cir. 2019).

## A.    Defendant Ivey – No Personal Participation

Plaintiff alleges that his cell was searched by CO Villalobos and CO Ivey on

August 28, 2022. Dkt. 4 at 49-60. He indicates he left his legal materials out and went to

the yard. *Id.* He alleges that when he returned no search report had been left in his cell

as directed by policy and he noticed various items missing including three legal drafts

he was working on for this and other lawsuits. *Id.* He alleges his legal drafts were taken

in retaliation for filing grievances and bringing his lawsuits. *Id.*

Defendants assert defendant Ivey was not involved, or did not personally

participate, in the search of plaintiff's cell. Dkt. 65 at 2, 7. To state a claim under 42

U.S.C. § 1983, plaintiff must allege facts showing how a defendant caused or personally participated in causing the harm alleged in the complaint. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981). In support of their motion, defendants submit the declaration of defendant Villalobos, stating it was he and CO Van Ogle, (Van Ogle is not named as a defendant), that conducted the search of plaintiff's cell on August 28, 2022. Dkt. 70 at 2. Defendants also submit a copy of the cell search report from August 28, 2022, indicating that Officer Villalobos and Officer Van Ogle – not defendant Ivey – conducted the search of plaintiff's cell. Dkt. 70-1. Defendants evidence shows that defendant Ivey did not personally participate in the alleged violation of plaintiff's rights.

Plaintiff did not file a response or present any evidence in opposition to defendants' motion. Furthermore, plaintiff's complaint is unverified – it does not contain a sworn statement declaring under penalty of perjury, that the allegations are true and correct pursuant to 28 U.S.C. 1746. *See* Dkt. 4. Therefore, the Court cannot consider the complaint as evidence in opposing defendants' motion for summary judgment. *See Lew v. Kona Hosp.*, 754 F.2d 1420, 1423 (9th Cir.1985) (a verified complaint may be used as an opposing affidavit under Rule 56 to the extent it expresses personal knowledge of admissible facts but an unverified complaint is insufficient to counter a summary judgment motion supported by affidavits); *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003) (the nonmoving party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements"); FRCP 56(c), (e).

Even if the Court were to consider the allegations in plaintiff's unverified complaint, plaintiff only makes the conclusory assertion that defendant Ivey was involved in the cell search but does not explain the basis for this assertion. Dkt. 4 at 53. Absent additional evidence, this conclusory assertion, even if considered, would be insufficient to raise a genuine issue of material fact considering the evidence presented by defendants. *Hansen*, 7 F.3d at 138 (nonmoving party cannot rely on conclusory allegations to defeat summary judgment).

Accordingly, defendants' motion should be granted, and the remaining retaliation claims against defendant Ivey related to the cell search should be dismissed with prejudice.

**B.    Plaintiff's Remaining Claims – Failure to Exhaust Administrative Remedies**

Defendants move to dismiss plaintiff's remaining claims on the grounds that plaintiff failed to exhaust his administrative remedies prior to commencing this action. Dkt. 65.

Before a prisoner may bring a civil rights action under 42 U.S.C. § 1983, they must first exhaust all available administrative remedies. Under the Prison Litigation Reform Act of 1995 ("PLRA"),

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Exhaustion in cases covered by § 1997e(a) is mandatory. *Booth v. Churner*, 532 U.S. 731, 739 (2001). Section 1997e(a) requires *complete* exhaustion through any available process. *See Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006) (proper exhaustion

"means using all steps that the agency holds out"); *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth*, 532 U.S. at 739. Thus, the mere fact a plaintiff has filed an initial grievance under a prison's grievance policy does not satisfy the PLRA exhaustion requirement; a plaintiff must exhaust *all* levels of an available grievance procedure before he can initiate litigation. *See Woodford*, 548 U.S. at 93-94; *Booth*, 532 U.S. at 736-41; *Porter*, 534 U.S. at 524-25. Section 1997e(a) also requires *proper* exhaustion. *Woodford*, 548 U.S. at 93-94. "Proper" exhaustion means full compliance by a prisoner with all procedural requirements of an institution's grievance process. *See id.* at 93-95. If administrative remedies have not been exhausted at the time an action is brought, the action must be dismissed without prejudice. *See McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002)(per curiam).

Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is still a prerequisite to suit. *Booth*, 532 U.S. at 741. If a claim is not exhausted, it must be dismissed. *McKinney*, 311 F.3d at 1199. Administrative remedies must be exhausted prior to the commencement of an action and may not be exhausted during the pendency of a lawsuit. *See id.* ("prisoner does not comply with [PLRA exhaustion] requirement by exhausting available remedies during the course of the litigation") (citations omitted).

Failure to exhaust administrative remedies is properly brought as a summary judgment motion or as a defense to a summary judgment motion. *Albino v. Baca*, 747 F.3d 1162, 1168 (9th Cir. 2014). Once the defendant proves there was an available administrative remedy and the offender failed to exhaust the available remedy, the burden shifts to the plaintiff. *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015).

1  The plaintiff must show there was something about his claim which made the "existing

2  and generally available administrative remedies effectively unavailable to him[.]" *Id.*

3  (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

4      In support of their motion, defendants submit the declaration of Carol Smith,

5  DOC Statewide Resolution Manager, as well as copies of the Resolution Program

6  Manual and the Department's Resolution Program Policy (DOC Policy 550.100) which

7  were in effect at the time of the claims alleged in plaintiff's complaint. Dkt. 69, Smith

8  Decl.; Dkts. 69-1, 69-2.

9      Defendants produced evidence showing that the DOC's Offender

10  Grievance/Resolution Program was implemented in 1984 department-wide and the

11  Resolution Program at each facility is managed according to the Department's

12  Resolution Program Policy (DOC Policy 550.100) as well as the Resolution Program

13  Manual (previously referred to as the Offender Grievance Program Manual). Dkt. 69,

14  Smith Decl., at 1-2.

15     Under this program, incarcerated individuals may file resolution

16  requests/grievances concerning issues relating to their incarceration including: (1)

17  Department policies, rules, and procedures; (2) the application, or lack of application, of

18  such policies, rules, and procedures; (3) the actions of Department employees, contract

19  staff, and volunteers; (4) actions of other individuals under the Department's jurisdiction;

20  (5) retaliation against an individual under the Department's jurisdiction for good faith

21  participation in the Resolution Program; (6) personal safety; (7) physical plant

22  conditions; (8) health services; (9) accounts; (10) sentence structure and records; (11)

23  food services; (12) religious programs; (13) Law firms and/or attorneys contracting with

24

25

the Department to provide legal assistance to individuals under the Department's

jurisdiction; (14) On behalf of a disabled visitor who is unable to pursue the concern with

the Superintendent/designee by telephone or mail. The visitor must be on the

individual's visit list and the concern must focus solely on some aspect of that disability;

(15) If a response provided by a Resolution Program review is not honored or

completed (this is not considered a repeat concern). Dkt. 69, Smith Decl. at 2-3.

At the time they arrive, each incarcerated individual is provided information about

the Resolution Program and informed that the policy and manual are maintained in the

prison library and available for review. *Id.* at 2-3. Resolution complaint forms are made

available to all incarcerated individuals. *Id.* at 4. To ensure the confidentiality of the

resolution requests, incarcerated individuals place their resolution request forms in a

locked resolution box in the housing units. *Id.* at 5. For inmates in the segregation units

without access to locked resolution box, resolution requests are sealed and collected

directly from the inmates. *Id.* The resolution requests are subsequently collected by the

Resolution Specialist for processing. *Id.*

The resolution procedure consists of four levels of review:

> Level 0 – Complaint or informal level. The Resolution Specialist at
> the prison receives a written complaint from an incarcerated individual on
> an issue about which the incarcerated individual wishes to pursue a
> resolution. At this complaint level, the Resolution Specialist determines if
> the resolution request is acceptable or not (following the guidelines
> outlined in the Resolution Program Manual), sends the resolution request
> back for more information or rewrite if necessary, and/or attempts to
> informally resolve the concern or promote accepted concerns for a Level I
> review.
> Level I – First formal review. *Id.* The handwritten concern is
> transcribed onto DOC 05-166 Level I Resolution Response and a copy is
> sent to the individual. The Resolution Specialist is the respondent at this
> level.

Level II – Second formal review. Incarcerated individuals may appeal Level I Resolution Requests to Level II. The handwritten concern is transcribed onto DOC 05-168 Level II Resolution Response and a copy is sent to the individual. The Level II Appeal is assigned to an employee/contract staff. Once the review is complete, the Superintendent or Health Services Administrator issues a formal response.

Level III – Third and final formal review. The appeal is reviewed/accepted/transcribed onto DOC 05-169 Level III Resolution Response and sent to Headquarters Resolution Program Unit. The Appeal is assigned for review by the Resolution Program Manager/designee. Once the review is complete, the Deputy Secretary/designee issues the formal response. This is the Department's final level of review and cannot be appealed.

Dkt. 69, Smith Decl. at 3-4.

The Resolution Program Manual provides that incarcerated individuals may have five active Resolution Requests at one time -- this includes active reviews, rewrites, appeals, and new concerns. *Id.* Medical concerns can be accepted over this limit with approval by the Resolution Program Manager. *Id.*

If an individual submits additional Resolution Requests or appeals beyond the allowable number, they will not be accepted. *Id.* If an individual files multiple requests at the same time that will put them over the maximum allowed active concerns, they will not be accepted and all will be sent back to the individual. *Id.* At that time, the individual may submit in writing their selection of which concern(s) they want to withdraw and which one(s) to process. *Id.*

The Resolution Specialist will issue a courtesy reminder when abuse of the system is suspected and/or ongoing. *Id.* Abuse is defined as submitting more than the maximum number of resolution requests. *Id.* Persistent abuse of the program guidelines may result in the individual being issued an infraction for interfering with the duties of an employee/contract staff/volunteer. *Id.*

The defendants assert that intentional abuse of the resolution process undermines the process and interferes with the goals of the program. Dkt. 69, Smith Decl., at 4. Ms. Smith states that "if individuals were able to file an unlimited number of Resolution Requests at any one time, it would overrun the system and render the Resolution Program useless, that DOC would be unable to process Resolution Requests effectively, and its ability to solve conflicts in the prisons would be severely diminished, leading to a more dangerous setting for everyone involved." *Id.*

Defendants' evidence shows that on June 10, 2022, plaintiff submitted a resolution request under Log ID #22759525 related to the programming opportunities available in the IMU. Dkt. 69, Smith Decl., at 5-6; Dkt. 69-1 at 48-53. An informal response was provided by the Resolution Specialist. *Id.* Plaintiff appealed the response but at the time, had more than five active Resolution Requests. *Id.* The appeal for this resolution request (LOG ID #22759525) was deemed not accepted and plaintiff was issued an abuse by quantity notification advising him that he had the opportunity to withdraw active requests and resubmit his Resolution Request for review within the limits of the Program rules. *Id.* Plaintiff failed to withdraw any requests and resubmit this resolution request. *Id.*

On July 20, 2022, plaintiff submitted a resolution request under Log ID #22760569 related to visitation, educational programming, access to phone and shower and mental health treatment in the IMU. Dkt. 69, Smith Decl., at 5-6; Dkt. 69-1 at 54-55. At the time, plaintiff had more than five active Resolution Requests. *Id.* This resolution request (LOG ID #22760569) was deemed not accepted and plaintiff was issued an abuse by quantity notification advising him that he had the opportunity to withdraw

active requests and resubmit his resolution request for review within the limits of the Program rules. *Id.* Plaintiff failed to withdraw any requests and resubmit this resolution request. *Id.*

On August 17, 2022, plaintiff submitted a resolution request under Log ID #22763523 alleging that he was retaliated against by Sgt. Johnson for utilizing the Resolution Program. Dkt. 69, Smith Decl., at 5-6; Dkt. 69-1 at 40-42. At the time, plaintiff had more than five active Resolution Requests -- plaintiff had seven Resolutions Requests that were picked up on August 19, 2022. *Id.* This resolution request (LOG ID #22763523) was deemed not accepted and plaintiff was issued an abuse by quantity notification advising him that he had the opportunity to withdraw active requests and resubmit his resolution request for review within the limits of the Program rules. *Id.* Plaintiff failed to withdraw any requests and resubmit this resolution request. *Id.*

On August 28, 2022, plaintiff submitted a resolution request under Log ID #22763554 related to a search of his cell conducted on August 28, 2022. Dkt. 69, Smith Decl., at 5-6; Dkt. 69-1 at 44-46. At the time, plaintiff had more than five active resolution requests -- he had three active concerns pending (22760571, 22760801, 22763343), and had submitted an additional four resolution requests that were picked up on August 30, 2022. *Id.* This resolution request (LOG ID #22763554) was deemed not accepted and plaintiff was issued an abuse by quantity notification advising him that he had the opportunity to withdraw active requests and resubmit his Resolution Request for review within the limits of the Program rules. *Id.* Plaintiff failed to withdraw any requests and resubmit this resolution request. *Id.*

With respect to plaintiff's claims related to his classification status and placement in max custody, defendants submit evidence that DOC Policy 300.389 provides that individuals may submit a classification appeal using DOC form 07-037 within 72 hours of being notified of the classification/custody level decision. Dkt. 28-3 at 18. Defendants' evidence shows that because the classification process has its own appeals process, challenges to classification decisions are not accepted pursuant to the Department's Resolution Program. Dkt. 69-1 at 8. Defendants submit evidence that plaintiff has never submitted a DOC form 07-37. Dkt. 66, Brown Decl., at 2.

Based on the evidence detailed above, the Court should hold that defendants carried their initial burden of showing the absence of exhaustion in this case with respect to plaintiff's remaining claims. Defendants have presented evidence that there was an available administrative remedy and plaintiff failed to exhaust the available remedy.

Specifically, with respect to plaintiff's retaliation claims against defendant Villalobos related to the search of his cell, and against Sergeant Johnson related to his statements to plaintiff about grievances, and plaintiff's Eighth Amendment claims against defendants Strange, Dehaven and Haynes, challenging the specific conditions of the confinement in IMU (including prolonged duration, social isolation, lack of programming opportunities, plaintiff's preexisting anxiety, and the alleged deterioration of his pre-existing mental health issues), defendants have shown there was a grievance procedure in place during the period in question and plaintiff did not properly and completely exhaust his administrative remedies through the available process. *See Wright v. Washington*, No. C20-1452-JCC-MLP, 2022 WL 756786, at *12 (W.D. Wash.

Jan. 18, 2022), *report and recommendation adopted*, No. C20-1452-JCC, 2022 WL

575701 (W.D. Wash. Feb. 25, 2022) (Where plaintiff had the option to withdraw one of

five pending grievances and pursue the one related to the claim raised in the lawsuit but

chose not to, he failed to demonstrate the administrative remedy procedure was

unavailable to him for purposes of exhausting his grievance).

With respect to plaintiff's Eighth Amendment claims related to his placement in

the IMU and the alleged disproportionality of that punishment to non-violent offenses

(even if he was properly found guilty in his disciplinary actions), defendants have

presented evidence that there was an available administrative remedy – to submit a

classification appeal using DOC form 07-037 within 72 hours of being notified of the

decision – and that plaintiff failed to exhaust that available remedy.[4]

Because the defendants have met their burden of proof, the burden shifts to

plaintiff. *See Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015). The plaintiff must

show there was something about his claim which made the "existing and generally

available administrative remedies effectively unavailable to him[.]" *Id.* (citing *Hilao v.*

*Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). Plaintiff has the burden of

proof to show that there is something particular in his case that made the existing and

generally available remedies effectively unavailable to him because "'the local remedies

were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'"

*Williams*, 775 F.3d at 1191 (quoting *Albino*, 747 F.3d at 1172). Acts by prison officials

preventing the exhaustion of administrative remedies may make administrative

---

[4] The Court notes that to the extent plaintiff's remaining claims challenge the DOC classification policies themselves, independent of the specific classification decisions in his case, defendants' evidence reflects that plaintiff did not challenge/exhaust his remedies with respect to these policies either through the Resolution Program or through the classification appeals process.

remedies effectively unavailable. *See Nunez v. Duncan*, 591 F.3d 1217, 1224-25 (9th Cir. 2010).

"The ultimate burden of proof, however, remains with the defendants," and the evidence must be viewed in the light most favorable to the plaintiff. *Williams*, 775 F.3d at 1191 (citing *Albino*, 747 F.3d at 1172). There are three circumstances in which an administrative remedy is considered to be unavailable:

> First, an administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use—i.e., some mechanism exists to provide relief, but no ordinary prisoner can navigate it. And finally, a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through machination, misrepresentation, or intimidation.

*Ross v. Blake,* 578 U.S. 632, 633 (2016).

Here, plaintiff did not file a response or present any evidence in opposition to defendants' motion. Furthermore, plaintiff's complaint is unverified, thus the Court cannot consider the complaint as evidence in opposing defendants' motion for summary judgment. *See Lew*, 754 F.2d at 1423; *Hernandez*, 343 F.3d at 1112; FRCP 56(c), (e).

Yet, even if the Court were to consider the allegations in plaintiff's unverified complaint, plaintiff has not asserted facts to show there was something particular in his case that made the existing and generally available remedies effectively unavailable to him. The complaint includes vague allegations that plaintiff has not received a timely response to "several" grievances but does not identify the particular grievances. Dkt. 4 at 50-51. Furthermore, defendants' evidence reflects that the grievances/resolution requests relevant to this case were responded to and that plaintiff did not exhaust his available remedies. Plaintiff does not raise a genuine issue of material fact that would preclude summary judgment.

The record shows plaintiff failed to exhaust the administrative remedies available to him with respect to the remaining claims before commencing his lawsuit. Therefore, the Court should grant defendants' motion for summary judgment and plaintiff's remaining claims should be dismissed without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003) *overruled on other grounds by Albino,* 747 F.3d at 1162 ("If the district court concludes that the prisoner has not exhausted nonjudicial remedies, the proper remedy is dismissal of the claim without prejudice.").[5]

<u>CONCLUSION</u>

Based on the foregoing discussion, the Clerk is directed to update the docket to reflect the correct spelling of the defendant's name -- currently identified as "Villanobos" -- to "Villalobos." Defendant's answer and filings make clear that the proper spelling of this defendant's name is Lewis "Villalobos." Dkt. 60. The undersigned recommends the Court should GRANT the remaining defendants' -- Cheryl Strange, Ron Haynes, Barry Dehaven, Villalobos, Ivey, and Johnson's -- motion for summary judgment (Dkt. 65). The Court should DISMISS the remaining retaliation claims against defendant Ivey *with prejudice.* The Court should DISMISS all other remaining claims in the action *without prejudice*. As no claims remain in the case, the Court recommends the case be closed. A proposed order and proposed judgment are attached.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for

---

[5] Because the Court finds defendants' motion should be granted with respect to these claims based on his failure to exhaust his administrative remedies, the Court does not reach defendants' other arguments.

purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the Clerk is directed to set the matter for consideration on **October 2, 2024**, as noted in the caption.

Dated this 17th day of September, 2024.

Theresa L. Fricke
United States Magistrate Judge